IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| CASEY BENDURE,<br><br>   Plaintiff,<br>v.<br><br>STAR TARGETS, JUSTIN HARDY, TLD INDUSTRIES LLC, CABELA'S WHOLESALE, INC., ROLLING THUNDER PYROTECHNIC, CORP. and MACRAFT USA, LLC<br><br>   Defendants. | CV 14-89-BLG-SPW-CSO<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| TDL INDUSTRIES LLC,<br><br>   Third-Party Plaintiff,<br>v.<br><br>ROLLING THUNDER PYROTECHNIC, CORP. and MACRAFT USA,<br><br>   Third-Party Defendants |  |

Before the Court is Third-Party Plaintiff TLD Industries, LLC's ("TLD") motion for default judgment against Third-Party Defendants Rolling Thunder Pyrotechnic Corp. ("Rolling Thunder") and Macraft

USA ("Macraft"). *Mtn. for Default Judgment (ECF 57)*.[1] For the reasons that follow, the Court recommends that TLD's motion be denied.

## I.  RELEVANT BACKGROUND[2]

Plaintiff Casey Bendure ("Bendure") originally filed this action in Montana state court on May 28, 2014, claiming that he sustained injuries when a Star Targets Rimfire Exploding Target ("exploding target") exploded while he was handling it. *Cmplt. (ECF 3) at ¶ 9*. He asserted negligence claims against Defendants Star Targets, Justin Hardy ("Hardy"), TLD, and Cabela's Inc. ("Cabela's"). *Id. at ¶¶ 10-13*.

On July 9, 2014, Cabela's, with the consent of Defendants who had appeared, removed the matter invoking this Court's diversity jurisdiction. *Notice of Removal (ECF 1); ECF 1-1 at 7-8*.

Some of the parties filed amended pleadings and on December 16, 2014, Defendants filed their Answer to Plaintiff's Second Amended Complaint. *ECF 22*. TLD asserted a Third-Party Complaint against

---

[1] "ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3*.

[2] This case's procedural background is contained in the record. Only that portion relevant to the instant motion is included here.

Third-Party Defendants Rolling Thunder and Macraft. *Id. at 15-16.* TLD claims that Rolling Thunder, a Wisconsin corporation, sells exploding targets to Macraft, a company with its primary place of business in New Mexico. Macraft, in turn, sells exploding targets to TLD, a Utah limited liability company, which does not alter the targets, but rather "put[s] them in a box with the Star Targets brand[ ]" before then selling them to Cabela's. *Id.* TLD claims that, under Montana law, "if TLD has liability to [Bendure], then Macraft USA and Rolling Thunder Pyrotechnic Corp. are responsible for some or all of that liability. If there is strict liability, then those defendants are fully responsible for the loss**."** *Id***.** *at 16*.

On August 20, 2014, TLD had summonses issued for Rolling Thunder and Macraft for service of its Third-Party Complaint against them. *ECF 8, 9; Affidavit of Eric N. Peterson (ECF 46) at ¶ 2.*

### A. <u>Service on Rolling Thunder</u>

On August 28, 2014, Rolling Thunder's registered agent, Robert Flint, was personally served. *ECF 11, 11-1; ECF 46 at ¶ 3.*

B. **Service on Macraft**

TLD attempted to personally serve Macraft's registered agent. TLD claims it was unsuccessful because the registered agent actively evaded service attempts. *ECF 46 at ¶¶ 5-7*. TLD sought to effectuate service through the Montana Secretary of State under the Federal and Montana Rules of Civil Procedure. *Id. at ¶ 6*. TLD did not publish the summons within the rules' time limits, and had the summons reissued on January 30, 2015. *Id. at ¶ 7*. TLD then submitted affidavits, deposits, and service documents to the Montana Secretary of State under the Federal and Montana Rules of Civil Procedure. *Id. at ¶ 8*. It also published the summons in a local newspaper. *Id. at ¶ 9*. The final day of publication was March 12, 2015. *Id. at ¶ 10*.

C. **Clerk of Court's Entry of Default**

Neither Rolling Thunder nor Macraft has appeared, filed an answer, otherwise responded to the Third-Party Complaint, or contacted TLD's counsel, even though both have been served with the Third-Party Complaint and summons. *Id. at ¶ 11-13*.

On May 15, 2015, TLD moved for entry of default. *ECF 44-47*. On May 18, 2015, the Clerk of Court entered default under Fed. R. Civ. P. 55(a) against Rolling Thunder and Macraft. *ECF 50*.

## II. <u>LEGAL STANDARD</u>

Rule 55(b) permits a court to enter default judgment following a defendant's default. *Boards of Trustees v. Energy Management*, 2012 WL 1657523, *1 (N.D. Cal. 2012) (citing *Shanghai Automation Instrument Co. v. Kuei,* 194 F.Supp.2d 995, 999 (N.D. Cal. 2001)). Whether to enter a default judgment lies within the court's discretion. *Draper v. Coombs,* 792 F.2d 915, 924-25 (9th Cir. 1986); *Pepsico, Inc. v. Cal. Sec. Cans,* 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."); *Shanghai Automation Instrument Co.,* 194 F.Supp.2d at 999.

A district court has an affirmative duty to look into jurisdiction over both the subject matter and the parties. "Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant."

*Board of Trustees*, 2012 WL 1657523, *2   When a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction.  A judgment entered without subject matter and personal jurisdiction over the parties is void. *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999)).

If a court is satisfied that it has jurisdiction and that service on defendants was adequate, the court next applies the following factors, sometimes known as the *Eitel* factors, to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted).

As part of this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Board of Trustees*, 2012 WL 1657523, *2 (*quoting Pepsico, Inc.,* 238 F.Supp.2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18

(9th Cir. 1987))). "Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim." Id. (citing Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992)).

## III.  DISCUSSION

Applying the foregoing legal standards, the Court first concludes that it has subject matter jurisdiction over this action.  The pleadings reflect that complete diversity of citizenship exists and the amount in controversy satisfies 28 U.S.C. § 1332's threshold amount.

Next, the Court must consider whether it has personal jurisdiction over Rolling Thunder and Macraft.  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman,* ___ U.S. ___, 134 S.Ct. 746, 753, 187 L.Ed.2d 624 (2014)).  The Montana Supreme Court, in *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17-19 (Mont. 2015), recently outlined the analytical framework courts in Montana are to employ when considering whether there exists personal jurisdiction over a defendant.  The supreme court summarized the framework as follows:

> We apply a two-step test to determine whether a Montana court may exercise personal jurisdiction over a nonresident defendant. We first determine whether personal jurisdiction exists under M.R.Civ.P. 4(b)(1). Personal jurisdiction may exist under Rule 4(b)(1) in one of two ways: a party may be found within the state of Montana and subject to general jurisdiction, or the claim for relief may arise from any of the acts listed in Rule 4(b)(1)(A-G) and create specific jurisdiction for the purpose of litigating that particular claim. If personal jurisdiction exists under the first step of the test, we then determine whether the exercise of personal jurisdiction conforms with the traditional notions of fair play and substantial justice embodied in the due process clause. If personal jurisdiction does not exist under the first part of the test, further analysis under the second part of the test is unnecessary.

*Id.* (citations and internal quotation marks omitted). *See also Bunch v. Lancair International, Inc.,* 202 P.3d 784, 795-96 (Mont. 2009) (affirming dismissal of strict product liability case for lack of personal jurisdiction).

The Court here cannot determine on the current record whether it has personal jurisdiction because TLD's Third-Party Complaint against Rolling Thunder and Macraft makes no allegations sufficient to invoke this Court's personal jurisdiction over them. *See ECF 22 at 15-16*. Because the Court cannot determine on the current record that personal jurisdiction over Rolling Thunder and Macraft exists, the Court must recommend that TLD's motion for default judgment be denied.

The Court also notes that, to the extent TLD relies on the allegations Bendure makes against Rolling Thunder and Macraft in his Second Amended Complaint, such reliance is misplaced. Bendure alleges only that: (1) Rolling Thunder "may have supplied materials used in the Star Targets Rimfire Exploding Targets, which were involved in the explosion described below, to Macraft[,]" *ECF 20 at ¶ 15*; (2) Macraft "may have supplied materials used in the Star Targets Rimfire Exploding Targets, which were involved in the explosion described below, to TLD[,]" *id. at ¶ 14*; (3) both Rolling Thunder and Macraft were "negligent in the production of the rimfire exploding target materials" at issue in this action, *id. at ¶¶ 20-21*; (4) both "knew or should have known of the significant risk of personal injury as a result of the foreseeable handling, storage, or use of rimfire exploding target materials[,]" *id. at ¶¶ 35-36*; (5) both "failed to comply with the [Federal Hazardous Substances Act] labeling requirements[,]" *id. at ¶ 41*; and (6) both, which are "in the business of selling rimfire exploding target materials[,]" are strictly liable for the injuries sustained by Plaintiff Bendure as [the exploding targets] were in a defective condition unreasonably dangerous to the consumer[,]" *id. at ¶¶ 49-51*.

Under the foregoing authority, none of these allegations sheds any light on whether this Court may exercise personal jurisdiction over Rolling Thunder and Macraft with respect to allegations contained in TLD's Third-Party Complaint.

In *Tuli, supra,* the Ninth Circuit explained that where a plaintiff seeks default judgment, the court may not assume the existence of personal jurisdiction, even though ordinarily personal jurisdiction is a defense that may be waived, because a judgment in the absence of personal jurisdiction is void. *Id.* Where there are questions about the existence of personal jurisdiction in a default situation, the court should give the plaintiff the opportunity to establish the existence of personal jurisdiction. *Id.* For this reason, the recommendation is that the motion be denied with leave to renew after an appropriate record is made.

Because of these conclusions, the Court need not apply the *Eitel* factors and need not address the propriety of Bendure's response brief (*ECF 62*) to TLD's motion.

## IV. CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that TLD's motion for default judgment against Third-Party Defendants Rolling Thunder and Macraft (*ECF 57*) be DENIED, with leave to renew.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 3rd day of September, 2015.

/s/ *Carolyn S. Ostby*
United States Magistrate Judge