# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| CASEY BENDURE,<br><br>       Plaintiff,<br><br>v.<br><br>STAR TARGETS, JUSTIN HARDY, TLD INDUSTRIES LLC, and CABELA'S WHOLESALE, INC.,<br><br>       Defendants. | CV 14-89-BLG-SPW-CSO<br><br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| TLD INDUSTRIES LLC,<br><br>       Third-Party Plaintiff,<br><br>v.<br><br>ROLLING THUNDER PYROTECHNIC, CORP. and MACRAFT USA,<br><br>       Third-Party Defendants. | |

Before the Court is Third-Party Plaintiff TLD Industries, LLC's ("TLD") renewed motion for default judgment against Third-Party Defendants Rolling Thunder Pyrotechnic Corp. ("Rolling Thunder") and Macraft USA ("Macraft") under Fed. R. Civ. P. 55(b)(2). *Renewed Mtn.*

*for Default Judgment (ECF No. 87).*[1]  For the reasons that follow, the Court recommends that TLD's motion be granted.

## I.  <u>RELEVANT BACKGROUND</u>

In Findings and Recommendation ("F&R") issued September 3, 2015, the Court addressed TLD's initial motion for default judgment against Rolling Thunder and Macraft. *Findings and Recommendation of U.S. Magistrate Judge (ECF No. 67).*  The Court set out the relevant background, including background concerning TLD's service upon Rolling Thunder and Macraft, and the Clerk of Court's entry of default. *Id. at 2-5.*  The Court will not repeat that background here.

After applying the legal standard for default judgment, the Court: (1) concluded that it has subject matter jurisdiction over this action under 28 U.S.C. § 1332, *id. at 7*; (2) determined that it was unclear from the record as it then existed whether it has personal jurisdiction over TLD's Third-Party Complaint against Rolling Thunder and Macraft, *id. at 8-10*; and (3) recommended that the motion for default judgment "be

[1] "ECF No." refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

denied with leave to renew after an appropriate record is made[,]" *id. at 10-11*. No party filed objections to the F&R.

On September 24, 2015, Judge Watters issued an Opinion and Order adopting the F&R, in full, and denying TLD's motion for default judgment with leave to renew. *ECF No. 68 at 1-3*.

On November 13, 2015, TLD, with the Court's leave, filed its amended third-party complaint against Rolling Thunder and Macraft. *See Order Granting Mtn. for Leave to File (ECF No. 80); Am. Third-Party Cmplt. (ECF No. 81)*. TLD alleges, inter alia, that Rolling Thunder and Macraft "are responsible for the condition of the targets when the targets were used by Plaintiff [Casey Bendure,]" who "alleges that the condition of the targets caused him injury." *ECF No. 81 at ¶¶ 7-8*. TLD further alleges that under "[MCA] § 27-1-703 and other statutory and common law of Montana, if TLD has liability to [Bendure], then Macraft [ ] and Rolling Thunder [ ] are responsible for some or all of that liability." *Id. at ¶ 15*.

On January 4, 2016, TLD filed its renewed motion for default judgment against Rolling Thunder and Macraft now before the Court. *ECF No. 87 at 1*.

## II.    LEGAL STANDARD FOR DEFAULT JUDGMENT

As detailed in the F&R discussed above, the appropriate legal standard for entry of a default judgment is as follows:

Rule 55(b) permits a court to enter default judgment following a defendant's default. *Boards of Trustees v. Energy Management*, 2012 WL 1657523, *1 (N.D. Cal. 2012) (citing *Shanghai Automation Instrument Co. v. Kuei,* 194 F.Supp.2d 995, 999 (N.D. Cal. 2001)). Whether to enter a default judgment lies within the court's discretion. *Draper v. Coombs,* 792 F.2d 915, 924-25 (9th Cir. 1986); *Pepsico, Inc. v. Cal. Sec. Cans,* 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."); *Shanghai Automation Instrument Co.,* 194 F.Supp.2d at 999.

A district court has an affirmative duty to look into jurisdiction over both the subject matter and the parties. "Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant." *Board of Trustees*, 2012 WL 1657523, *2.  When a court is considering

whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction. A judgment entered without subject matter and personal jurisdiction over the parties is void. *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999)).

If a court is satisfied that it has jurisdiction and that service on defendants was adequate, the court next applies the following factors, sometimes known as the *Eitel* factors, to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted).

As part of this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Board of Trustees*, 2012 WL 1657523, *2 (*quoting Pepsico, Inc.,* 238 F.Supp.2d at 1175 (*citing Televideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir. 1987))). "Nevertheless, default does not compensate for

5

essential facts not within the pleadings and those legally insufficient to prove a claim." *Id.* (*citing Cripps v. Life Ins. Co. of N. Am.,* 980 F.2d 1261, 1267 (9th Cir. 1992)).

## III.  DISCUSSION

Applying the foregoing legal standards, the Court concludes that TLD's motion for entry of default judgment should be granted.

### A.  Subject Matter Jurisdiction

The Court already has concluded that it has subject matter jurisdiction over this action under 28 U.S.C. § 1332.  *ECF No. 67 at 7; ECF No. 68 at 2.*

### B.  Personal Jurisdiction

The Court concludes that TLD's amended third-party complaint includes allegations sufficient to invoke this Court's personal jurisdiction over Rolling Thunder and Macraft.  On a motion seeking default judgment, "a plaintiff must make a prima facie showing of the existence of personal jurisdiction." *Heidorn v. BDD Marketing & Management Co., LLC*, 2013 WL 6571629, *7 (N.D. Cal. 2013) (*citing DFSB Kollective Co. Ltd. v. Bourn*, 897 F.Supp.2d 871, 885 (N.D. Cal. 2012)).  "[T]o establish a prima facie case, plaintiffs are not limited to

evidence that meets the standards of admissibility ... [but] [r]ather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Id.* (*quoting Mwani, et al. v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) and *citing Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (holding on a motion to dismiss that in order to make a prima facie showing, the plaintiff must produce "facts that if true would support jurisdiction over the defendant"). "In evaluating whether a prima facie case is pled, only well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.'" *Id.* (*quoting High Tech Pet Products, Inc. v. Juxin Pet Product Co., Ltd.*, 2013 WL 1281619, at * (E.D. Cal., March 27, 2013) (*quoting Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995))).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman,* ___ U.S. ___, 134 S.Ct. 746, 753, 187 L.Ed.2d 624 (2014)). Under Montana law,

> [courts] first determine whether personal jurisdiction exists under M. R. Civ. P. 4(b)(1). Personal jurisdiction may exist under Rule 4(b)(1) in one of two ways: a party may be found within the state of Montana and subject to general jurisdiction, or the claim for

7

relief may arise from any of the acts listed in Rule 4(b)(l)(A-G) and create specific jurisdiction for the purpose of litigating that particular claim. If personal jurisdiction exists under the first step of the test, [a court] then determine[s] whether the exercise of personal jurisdiction conforms with the traditional notions of fair play and substantial justice embodied in the due process clause. If personal jurisdiction does not exist under the first part of the test, further analysis under the second part of the test is unnecessary.

*Milky Whey, Inc. v. Dairy Partners, LLC,* 342 P.3d 13, 17 (Mont.2015) (internal quotations and citation marks omitted).

Here, TLD alleges in its amended third-party complaint that the actions of Rolling Thunder and Macraft, directed at Montana, resulted in the accrual of a tort action in Montana. *TLD's Supporting Br. (ECF No. 88) at 9.* Specifically, TLD alleges that: (1) TLD was approached by Cabela's Wholesale Inc. ("Cabela's") to provide Cabela's with rim-fire targets for sale in Cabela's retail stores throughout the United States, including Montana, *ECF 81 at ¶ 4*; (2) TLD entered into a business relationship and supply chain with Rolling Thunder and Macraft whereby Rolling Thunder would create the targets and ship them to Macraft, which would then ship the targets to TLD, *id. at ¶ 5*; (3) TLD would then sell the targets to Cabela's, which would then sell them to consumers, *id. at ¶ 7*; (4) Rolling Thunder and Macraft would capitalize from this arrangement because Cabela's retail stores are in various

states, including Montana, *id. at ¶ 6*; and (5) because no entity, including TLD, altered the targets before Cabela's sold them to consumers, Rolling Thunder and Macraft were responsible for the targets' condition when they were used by Plaintiff Casey Bendure ("Bendure") in this case, *id. at ¶ 8*; (6) based on Bendure's allegation that he was injured when a target unexpectedly exploded, Rolling Thunder and Bendure engaged in acts that resulted in the accrual of a tort action in Montana, *id. at ¶ 10*; and (7) Rolling Thunder and Macraft purposely availed themselves of conducting business in Montana through the above-described arrangement, *id. at ¶ 11*.

The Court concludes that the foregoing allegations are sufficient to establish the Court's personal jurisdiction over Rolling Thunder and Macraft under Mont. R. Civ. P. 4(b)(1)(B) because their alleged actions resulted in the accrual of a tort action within Montana. This Court has recognized that when a manufacturing or design defect occurring outside Montana causes an accident in Montana, with resulting injuries, the tort accrued in Montana. *Scanlan v. Norma Projektil Fabrik*, 345 F.Supp. 292, 293 (D. Mont.1972) ("It is now settled that a tort action may accrue in a state wherein the injury occurs and

consequently there is jurisdiction here if defendant's acts satisfy the

minimum contacts requirement."); *see also Jackson v. Kroll, Pomerantz*

*and Cameron*, 724 P.2d 717, 721 (1986) ("Under Montana law, the act

causing the injury ... need not occur in Montana as long as the tort

accrues here.").

The next inquiry, then, is whether the Court's exercise of personal

jurisdiction over Rolling Thunder and Macraft comports with due

process.  Due process requires that nonresident defendants have certain

minimum contacts with the forum state such that the exercise of

personal jurisdiction does not offend traditional notions of fair play and

substantial justice.  *See International Shoe v. Washington*, 326 U.S. 310,

316 (1945).  The Court must determine whether such nonresident

defendants had "fair warning that a particular activity may subject

[them] to the jurisdiction of a foreign sovereign."  *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 472 (*quoting Shaffer v. Heitner*, 433 U.S. 186,

218  (1977) (Stevens, J., concurring in judgment)).  The required "'fair

warning' is satisfied if the defendant has 'purposefully directed' his

activities at residents of the forum, and the litigation results from

alleged injuries that 'arise out of or relate to' those activities." *Id.*

(citations omitted).

Courts in the Ninth Circuit are to employ a three-part test in

determining whether *Burger King's* requirements are met with respect

to a particular defendant:

> (1) The nonresident defendant must do some act or consummate
> some transaction with the forum or perform some act by which he
> purposefully avails himself of the privilege of conducting activities
> in the forum, thereby invoking the benefits and protections of its
> laws[;] (2) [t]he claim must be one which arises out of or results
> from the defendant's forum-related activities[; and] (3) [e]xercise
> of jurisdiction must be reasonable.

*Omeluk v. Lansten Slip and Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.

1995) (*citing Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d

1280, 1287 (9th Cir.1977) and *Roth v. Garcia Marquez*, 942 F.2d 617,

620–21 (9th Cir.1991)).

The "purposeful availment," "arising out of forum-related

activities" and "reasonableness" criteria provide the analytical

framework that courts in the Ninth Circuit employ when considering

whether the "constitutional touchstone" of "minimum contacts"

necessary for due process is satisfied. *Omeluk*, 52 F.3d at 270 (*citing*

*Burger King*, 471 U.S. at 474). "If any of the three requirements is not

satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Id.*

In the case at hand, the Court concludes that all three criteria are satisfied. First, TLD alleges that Rolling Thunder and Macraft purposely availed themselves of the privilege of conducting business in Montana, or at least purposely directed their activities at Montana by capitalizing off of Cabela's retail markets in Montana. Because Rolling Thunder and Macraft, despite being properly served as discussed infra, have not appeared, they have not disputed TLD's allegations.

Second, TLD alleges that Rolling Thunder and Macraft were involved in the creation of the exploding targets and, ultimately, in shipping the targets, through TLD, to Cabela's stores in Montana. Again, Rolling Thunder and Macraft have not disputed TLD's allegations. Thus, the Court concludes that the underlying claim is one that arises out of or results from their forum-related activities.

Third, because the first two criteria are satisfied, personal jurisdiction is presumed reasonable unless Rolling Thunder and Macraft present a compelling case to the contrary. *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1192 (9th Cir. 2002). To

assess the reasonableness of the exercise of personal jurisdiction, courts in the Ninth Circuit are to apply the following seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

Because Rolling Thunder and Macraft have not appeared in this action, they have presented no argument, let alone a compelling one, to refute the reasonableness of the Court's exercise of personal jurisdiction over them. And, under the circumstances, application of the foregoing seven factors further supports the reasonableness of the Court's exercise of personal jurisdiction over them. First, their presence in the supply chain providing exploding targets to Cabela's retail stores shows at least a modest amount of purposeful interjection into Montana's affairs. Second, Rolling Thunder and Macraft have not asserted that they would be burdened by the exercise of this Court's personal

jurisdiction over them. Third, they have not demonstrated a conflict between their home jurisdictions' laws and Montana's laws. Fourth, TLD has alleged that Montana has some interest in adjudicating this dispute and Rolling Thunder and Macraft have not argued otherwise. Fifth, this matter has been pending for more than 21 months, and it would be more efficient to resolve the dispute in this forum than to move part of it to another forum at this time. Sixth, it appears that it would be more convenient for TLD to litigate this dispute and obtain relief in this forum rather than proceed in multiple forums. Seventh, Rolling Thunder and Macraft have not presented any alternative forum for adjudication of this dispute.

Balancing the above factors, the Court concludes that Rolling Thunder and Macraft have not presented a compelling case that the exercise of personal jurisdiction over them in Montana is unreasonable. Thus, the Court further concludes that it is appropriate to exercise personal jurisdiction over Rolling Thunder and Macraft in this action.

### C.   Service on Rolling Thunder and Macraft

The Court concludes that TLD properly served Rolling Thunder and Macraft with the original third-party complaint. It is not disputed

in the record that on August 28, 2014, Rolling Thunder's registered agent, Robert Flint, was personally served. *ECF No. 67 at 3 (citing ECF No. 11, 11-1; ECF No. 46 at ¶ 3).*

And, TLD attempted to personally serve Macraft's registered agent. *Id. at 4.* TLD claims it was unsuccessful because the registered agent actively evaded service attempts. *Id. (citing ECF No. 46 at ¶¶ 5-7).* TLD sought to effectuate service through the Montana Secretary of State under the Federal and Montana Rules of Civil Procedure. *Id. (citing ECF No. 46 at ¶ 6).* TLD did not publish the summons within the rules' time limits, and had the summons reissued on January 30, 2015. *Id. (citing ECF No. 46 at ¶ 7).* TLD then submitted affidavits, deposits, and service documents to the Montana Secretary of State under the Federal and Montana Rules of Civil Procedure. *Id. (citing ECF No. 46 at ¶ 8).* It also published the summons in a local newspaper. *Id. (citing ECF No. 46 at ¶ 9).* The final day of publication was March 12, 2015. *Id. (citing ECF No. 46 at ¶ 10).*

Finally, neither Rolling Thunder nor Macraft has appeared, filed an answer, otherwise responded to the third-party complaint, or contacted TLD's counsel, even though both have been served with the

third-party complaint and summons. *Id. (citing ECF No. 46 at ¶¶ 11-13)*. On May 15, 2015, TLD moved for entry of default. *Id. (citing ECF Nos. 44-47)*. On May 18, 2015, the Clerk of Court entered default under Fed. R. Civ. P. 55(a) against Rolling Thunder and Macraft. *Id. (citing ECF No. 50)*.

The Federal Rules of Civil Procedure do not require TLD to serve Rolling Thunder and Macraft with the amended third-party complaint. *See* Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4.). Here, the amended third-party complaint does not assert a new claim for relief against either Rolling Thunder or Macraft. Thus, further service upon them is not required.

And, even though further service is not required under the federal rules, TLD has presented evidence that it gave notice to Rolling Thunder and Macraft under Fed. R. Civ. P. 5(b)(2)(C) by mailing the amended third-party complaint to them at each party's last known address on December 4, 2015. *See Affidavit of Paul C. Collins (ECF No. 88-1) at ¶¶ 12 and 13*.

The Court's conclusion that TLD properly served Rolling Thunder and Macraft is not altered by Bendure's argument that service was improper. *ECF No. 90 at 3-8.* Setting aside the issue of whether Bendure has standing to oppose TLD's motion for default judgment against third-party defendants Rolling Thunder and Macraft, the Court concludes that service was proper.

First, TLD's service upon Rolling Thunder after it had been administratively dissolved did not render such service improper under either Montana law or the law of Wisconsin, where Rolling Thunder was incorporated. *See* MCA § 35-1-935(2)(e) ("Dissolution of a corporation does not . . . prevent commencement of a proceeding by or against the corporation in its corporate name[.]"); Wisc. Stat. Ann. 180.1405(2)(e) ("Dissolution of a corporation does not do any of the following: . . . Prevent commencement of a civil, criminal, administrative or investigatory proceeding by or against the corporation in its corporate name."). And, it is undisputed that TLD served Rolling Thunder's last known registered agent. Thus, Bendure's argument that service was defective is unpersuasive.

Second, TLD's service upon Macraft was proper under Montana law, and Bendure's argument that such service was defective is unpersuasive. Bendure's argument that TLD should have served Macraft under Mont. R. Civ. P. 4(o)(1) and (3)(b) is incorrect. As TLD notes, it served Macraft under Rule 4(j)(8)(B), which allows service by publication when a corporation's officers or directors cannot be found in Montana. And, as occurred here, when the person to be served is not located or served, "service by publication must also be made as provided in Rules 4(c)(2)(D) and 4(o)(4)." Mont. R. Civ. P. 4(j)(8)(B). It is undisputed that TLD complied with the requirements of these two rules. The additional requirements urged by Bendure are not implicated under the circumstances present here nor under the applicable rules.

Based on the foregoing, the Court concludes that TLD properly served Rolling Thunder and Macraft.

### D. **Default Judgment**

Having concluded that it has jurisdiction and that service on Rolling Thunder and Macraft was adequate, the Court turns next to the

motion for default judgment and addresses the *Eitel* factors.  As noted,

the factors are as follows:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation

omitted).

Consideration of the factors leads the Court to conclude that they

weigh in favor of granting TLD's motion for default judgment.  It is

presumed, in the absence of any argument or evidence to the contrary,

that the failure of Rolling Thunder and Macraft to appear and answer

the third-party complaint prejudices TLD's ability to promptly obtain

justice and receive effective relief.  As discussed above, TLD's unrefuted

allegations contained in the amended third-party complaint render the

pleading sufficient and serve to establish the merits of TLD's claim

against Rolling Thunder and Macraft.  Thus, the first, second, and third

*Eitel* factors weigh in favor of default judgment.

The amount of money at stake has not been determined at this juncture in the proceedings because liability and damages determinations in the first-party action have yet to be adjudicated. And, TLD has presented no information about the possibility of a dispute concerning material facts. Thus, the fourth and fifth *Eitel* factors are neutral.

There is no indication that default was due to excusable neglect. The record indicates that Rolling Thunder's registered agent, Robert Flint, was personally served on August 28, 2014, and that he died about three months later. *ECF No. 90 at 4 (citing ECF No. 51 at 3).* But no evidence indicates that Mr. Flint's death excused Rolling Thunder's default. And there is no evidence of any excusable neglect respecting Macraft's default. Thus, the sixth *Eitel* factor weighs in favor of default judgment.

Finally, respecting the seventh *Eitel* factor – the strong policy favoring decisions on the merits – "[c]ases should be decided upon the merits whenever reasonably possible." *Pepsico*, 238 F.Supp.2d at 1177 (*quoting Eitel*, 782 F.2d at 1472). But "the mere existence of Fed. R. Civ. P. 55(b) indicates that 'this preference, standing alone, is not

dispositive." *Id.* (*quoting Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal., Feb. 13, 1996)).  And a defendant's failure to answer or otherwise appear "makes a decision on the merits impractical, if not impossible." *Id.*  Therefore, "the preference to decide cases on the merits does not preclude a court from granting default judgment." *Id.* (*quoting Kloepping, supra*).

For the foregoing reasons, and considering the facts in the aggregate, the Court concludes that the *Eitel* factors weigh in favor of entry of default judgment.  Thus, TLD's motion for default judgment against Rolling Thunder and Macraft should be granted.

In reaching the foregoing conclusions, the Court notes that it is not persuaded by Bendure's argument that default judgment in TLD's favor against Rolling Thunder and Macraft will be prejudicial to him "in his ability to show TLD's true role in this action." *ECF No. 90 at 10.* Again, without addressing whether Bendure has standing to contest TLD's motion, the Court concludes that he will suffer no unfair prejudice if the motion is granted.

As TLD concedes in its reply brief, even if the Court enters the requested default judgment, "the jury is going to have to compare fault

among the parties on the negligence claim . . . and if [Bendure] wins that claim, he will be able to collect damages directly from Defendants[, who may then] seek reimbursement from the upstream product suppliers. Nothing about that diminishes [Bendure's] claim in any way – only whether Defendants are entitled to reimbursement." *ECF No. 91 at 5* (*citing Poulsen v. Treasure State Industries, Inc.*, 626 P.2d 822, 829 (Mont. 1981)); *see also State Farm Fire and Cas. Co. v. Bush Hog, LLC*, 219 P.3d 1249, 153 (Mont. 2009) ("The purpose of upstream indemnity is to allow a person or entity downstream on the chain of distribution to recover for sums paid to a third party whose injuries were caused by a defective product, thereby placing ultimate responsibility for the defect on the manufacturer."). Thus, Bendure will suffer no prejudice if the Court grants TLD's motion for default judgment.

## IV. <u>CONCLUSION</u>

Based on the foregoing, IT IS RECOMMENDED that TLD's renewed motion for default judgment against Third-Party Defendants Rolling Thunder and Macraft (*ECF 87*) be GRANTED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States

Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 1st day of March, 2016.

/s/ Carolyn S. Ostby
United States Magistrate Judge